IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY J., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 CV 2475 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Gregory J.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 13, 23] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion to Reverse the Decision of the Commissioner of Social Security [ECF No. 13] is granted and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied.

## PROCEDURAL HISTORY

On October 13, 2015, Claimant filed a Title II application for DIB alleging disability beginning on July 31, 2015. (R. 170–76). His claim was denied initially and upon reconsideration, after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R. 109–18). On November 27, 2017, Claimant appeared and testified at a hearing before ALJ Margaret A. Carey. (R. 38–61). ALJ Carey also heard testimony on that date from impartial vocational expert ("VE") Ronald Malik. (R. 62–66). On February 28, 2018, ALJ Carey denied Claimant's claim for DIB. (R. 15–33).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since July 31, 2015, his alleged disability onset date. (R. 17). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 17-18). Specifically, Claimant suffered from depressive disorder, substance addiction disorder, post-traumatic stress disorder, blindness in his left eye, glaucoma in his right eye, and obesity. (R. 17–18). The ALJ also acknowledged several non-severe complaints – degenerative disc disease, obstructive sleep apnea, hypertension, and

diabetes mellitus type II – but concluded that those impairments caused no more than minimal vocationally relevant limitations. (R. 18).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19–22). In particular, the ALJ considered listings 2.02 and 2.03 related to Claimant's visual limitations, SSR 02-1p and listings 1.00Q, 3.00I, and 4.00F to account for Claimant's obesity and any related musculoskeletal, respiratory, and cardiovascular impairments, and listings 12.04 and 12.11 as pertaining to Claimant's mental impairments. (R. 19–22). With respect to listing 2.02, the ALJ concluded that although Claimant was blind in his left eye, his right eye was 20/60 with correction and 20/70 or 20/80 without correction. (R. 19). Therefore, it did not meet the listing requirement that the vision in the better eye, with correction, be 20/200 or less. (R. 19). Regarding listing 2.03, which deals with contraction of the visual field in the better eye, the ALJ noted that Claimant's consultative eye exam on January 25, 2016 and visual field testing done through the Department of Veteran's Affairs ("VA") did not indicate listing level findings. (R. 19). Similarly, the ALJ acknowledged Claimant's obesity diagnosis but noted that there was "no indication [Claimant's] obesity, alone or in combination with any other impairment, medically equals the criteria of any listed impairment." (R. 19).

The ALJ also considered the severity of Claimant's mental impairments – depressive disorder, substance addiction disorder, and post-traumatic stress disorder

– and determined that those impairments did not meet or medically equal the criteria of listings 12.04 or 12.11.[3] (R. 19–20). In so doing, the ALJ considered whether Claimant's mental impairments created any functional limitations to satisfy the "paragraph B" criteria," and opined they did not. (R. 19-21). In understanding, remembering, or applying information, the ALJ found Claimant has no limitation. (R. 20). In interacting with others, the ALJ concluded Claimant has moderate limitation, although she later went on to say that Claimant had "no more than a mild limitation in this area." (R. 20). Regarding concentration, persistence, and pace, the ALJ determined Claimant has a moderate limitation, citing to Claimant's struggles during his mental status exams. (R. 20). Finally, in adapting or managing oneself, the ALJ assessed that Claimant has moderate limitations. (R. 20–21).

The ALJ then found Claimant had the RFC,[4] through his date last insured, to:

> "perform light work as defined in 20 CFR 404.1567(b) except that he cannot climb ladders, ropes, or scaffolds. He can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. He cannot work at unprotected heights or with moving mechanical parts. The claimant has monocular vision on the right so work should be in front of the individual and not coming into the field of vision from the left. The claimant retains the visual acuity to read

---

[3] As the ALJ noted, new mental health listings went into effect after the date of Claimant's application but before the ALJ's decision was issued on February 28, 2018. (R. 21). The ALJ considered Claimant's mental health impairments in accordance with the regulation effective as of January 17, 2017. *Id.* However, after the ALJ's decision in this case, the relevant regulatory criteria changed again and are substantively different than those applied by the ALJ. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (effective Mar. 14, 2018). For example, the current regulations eliminate the "episodes of decompensation" criterion entirely. *See id.* § 12.04. Thus, in reviewing the ALJ's decision, the Court looks to the Appendix 1 Criteria effective as of the date that decision was issued. *See McCammond v. Colvin,* 2016 WL 3595736, at *2 (N.D. Ill. 2016).

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue,* 539 F.3d 668, 675–76 (7th Cir. 2008).

4

textbook size print and could only occasionally be required to read or use computer screens. The claimant retains the ability to understand, remember, concentrate, and perform simple routine repetitive work in a low stress environment defined as having few if any simple work related decisions and few if any changes in the work setting. He cannot interact with the public and only occasional interaction with coworkers." (R. 22).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a mail carrier, which the VE assessed was semi-skilled work at the medium exertional level as it is performed in the national economy and at the light to medium exertional level as it was actually performed by Claimant. (R. 32). This past relevant work exceeded Claimant's residual functional capacity, and so the ALJ concluded he could no longer perform it. (R. 32). At step five, the ALJ concluded that, considering Claimant's age, education, past work experience, and residual functional capacity, Claimant is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 32–33). Specifically, the VE's testimony, on which the ALJ relied, identified jobs including a marker, folder, or bander. (R. 33). The ALJ then found Claimant was not under a disability from July 31, 2015, the alleged onset date, through the date of the ALJ's decision on February 29, 2018. (R. 33). The Appeals Council declined to review the matter on September 18, 2018, (R. 509–12), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); see, e.g., *Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent

6

credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

Claimant argues five points of error on appeal. First, he contends that the ALJ failed to properly accommodate all of his mental and physical impairments supported by the medical record. Second, he specifically argues that the ALJ failed to account for his "morbid obesity" in the RFC. Third, he disputes the ALJ's conclusion that his subjective symptom statements were not credible or consistent with the medical evidence. Fourth, he charges that the ALJ improperly rejected the opinion of his treating physician. Fifth, he cursorily argues that there were gaps in the VE's reasoning and testimony that require remand. As explained below, the Court agrees with Claimant that the ALJ failed to account for Claimant's mental limitations in the RFC, and so remand is required. The Court reaches no express conclusions about the merit of Claimant's other four contentions.

### I. The ALJ did not Adequately Account for Claimant's Mental Limitations in the RFC

All of Claimant's limitations must be incorporated into both the hypothetical posed to the VE and the ALJ's RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record," including even moderate

7

limitations in concentration, persistence, or pace. *Varga*, 794 F.3d at 813. "Though an RFC assessment need not recite the precise phrase 'concentration, persistence, or pace,' any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 739 (7th Cir. 2018)). So, while there is no "magic words requirement," the ALJ must at least "ensure that the VE is apprised fully of the claimant's limitations so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Moreno*, 882 F.3d at 730) (internal quotations omitted); *see also, Lothridge v. Saul,* 984 F.3d 1227, 1233 (7th Cir. 2021).

The ALJ did not do so here, at least not to this Court's satisfaction. As part of her step three analysis, the ALJ assessed Claimant's mental limitations and concluded, among other things, that Claimant had moderate limitations in concentrating, persisting, and maintaining pace. (R. 20, 29). In particular, she credited findings from Claimant's mental status exams at the VA that Claimant had difficulty concentrating. (R. 20); (R. 822-23, 1089) (3/9/16) ("[O]n m/s wearing old jacket, and watchcap, describes more [disappointments] and difficulty seeing anything good happening. Not crying but clearly saddened, decreased concentration, pain in [eye], poor sleep, eating OK. No active [suicidal ideations] or [homicidal ideations]."); (R. 826) (10/30/15) ("On m/s abnormal eyes, multiple physical complaints (pain, loss of vision, sleep apnea, hypertension) despondent, sees no future but being blind, feels as if no one is helping and he doesn't know what to do. Crying

8

saying he's tried to do his beat, worked for 21 years and can't go on. Sleep poor, concentration poor, some [suicidal ideation] but no real plan or immediate intent."); (R. 973) (8/17/17) ("[O]n m/s wearing hoody, upset, angry but mostly feeling downtrodden, just too much being thrown at him, crying, frustrated, can't relax, forgetting things (MD appointments) can't sleep, no SI or HI."). However, she believed these documented limitations were tempered by Claimant's self-reports that he could pay attention for as long as he needed to and that he had no problem following spoken instructions, and the fact that Claimant's mental limitations were largely caused or exacerbated by Claimant's physical condition. (R. 20). So, she assessed that Claimant had "no more than moderate limitations" in concentrating, persisting, or maintaining pace. (R. 20).

At step four, however, the ALJ failed to include RFC restrictions corresponding to those moderate limitations. Instead, she traveled the road against which the Seventh Circuit has repeatedly warned: limiting Claimant to simple, routine, and repetitive work without addressing his ability to work at a sustained pace for an entire workday, regardless of a task's simplicity. *See, e.g., Lothridge*, 984 F.3d at 1233; *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020); *Crump*, 932 F.3d at 570; *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019); *Moreno*, 882 F.3d at 730. The ALJ gave no explanation for her conclusion that restricting Claimant to unskilled work would account for Claimant's particular mental health impairments, leaving this Court to guess how a rote limitation to simple, routine tasks accommodates an

9

individual whose difficulty concentrating is largely caused by depressive symptoms, not just the complexity of a particular task.

For example, Claimant was repeatedly described as "ambivalent," that he "feels he doesn't have energy to do anything," (R. 1069), and as having "no energy, no interest…despondent, little range of affect beyond being desolate, hopeless, [and] helpless," (R. 1064); (R. 1042) ("[Claimant] stays home [by] himself and 'survives' almost no contact with other [people]…Vet has not found any 'hobbies' or interests…very grim picture of his life, no enthusiasm, enjoyment, nothing to look forward to."). It stands to reason, then, that Claimant's depressive and PTSD-related symptoms would particularly affect his ability to stay on task for a sustained period of time and at a consistent pace. *See, e.g., O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010) ("…in the present case it is not clear whether the hypothetical, which included a restriction to repetitive tasks with simple instructions, would cause the VE to eliminate positions that would pose significant barriers to someone with the applicant's depression-related problems in concentration, persistence and pace.); *Craft*, 539 F.3d at 677–78 (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings); *Yurt,* 758 F.3d at 859 (a hypothetical restricting the claimant to "unskilled task[s] without special considerations" did nothing to ensure that the VE eliminated from her responses those positions that would prove too difficult for someone with claimant's depression and psychotic disorder, as the ALJ did not establish a link between those workplace restrictions and the claimant's mental limitations).

Not only did the ALJ fail to accommodate Claimant's moderate limitations in her RFC assessment, but she also painted an incomplete picture of Claimant's limitations in her hypothetical to the VE. "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record," including moderate limitations in concentration, persistence, or pace. *Varga*, 794 F.3d at 813. There is no form the ALJ must follow, but in substance, the ALJ must fully apprise the VE of the claimant's limitations so the VE can accurately describe the jobs that claimant would or would not be able to perform. *Moreno*, 882 F.3d at 730. "The best way to do that is by including the specific limitations—like [concentration, persistence, and pace]—in the hypothetical." *Crump*, 932 F.3d at 570. But here, the ALJ actively downplayed Claimant's mental limitations and made no mention of the moderate limitation in concentration, persistence, and pace that she herself assessed. Instead, she told the VE to assume that Claimant "retains the ability to understand, remember, concentrate" and that he would be able to "perform simple, routine, repetitive work in a low stress environment defined as having few, if any, changes in the work setting, no interaction with the public and only occasional interaction with co-workers." (R. 62). By presupposing that simple, routine, and repetitive work fully encapsulated and accounted for Claimant's mental limitations, and by failing to apprise the VE of Claimant's specific needs and deficits, the ALJ tainted the VE's assessment of available jobs for someone with Claimant's actual limitations. In the Court's view, this error requires remand under the circumstances of this case.

11

The ALJ gave a nod to Claimant's struggles with concentration, persistence, and pace in her third hypothetical, where she incorporated a functional limitation of an individual that would be "off task greater than 10 percent of the work day and/or missing two or more days per month due to depressive symptoms." (R. 64). Both the ALJ and the VE agreed that a person limited in this way would not be able to sustain Claimant's past work as a mail carrier or find any other work in the national economy. (R. 64). But the ALJ never incorporated this opinion in the RFC, nor did she discuss anywhere whether Claimant would be off task for any period of time during the workday as a result of his functional limitations. She was simply silent on the issue, neither citing evidence that Claimant could meet these benchmarks, nor addressed the evidence that he could not. *See, e.g, Winsted v. Berryhill,* 923 F.3d 472, 477 (7th Cir. 2019).

To some degree, then, it appears that the ALJ cherry-picked evidence in the record in support of her RFC assessment, including which VE hypothetical she eventually chose to accept. This is particularly problematic where there was an opinion of record from Claimant's treating physician, Dr. Daniel Luchins, that Claimant would be off task more than 30% of the time during an eight-hour day and absent more than six days per month as a result of his mental impairments. (R. 30). The ALJ simply did not address the substance of that portion of Dr. Luchins's opinion, instead choosing to generally discount "the rest of Dr. Luchins's opinion" because it was inconsistent with a single exam in February of 2017 and the ALJ's apparent view

12

that Claimant's depressive symptoms were not as disabling because they were largely brought on by his physical limitations and vision problems. (R. 20).

The ALJ appeared to discount the impact of Claimant's major depressive disorder and PTSD on his ability to concentrate, persist, or keep pace by repeatedly highlighting the fact that Claimant's depressive symptoms were caused, or at least exacerbated, by his physical ailments in support of her conclusions that fewer workplace restrictions were warranted, or that Claimant's subjective symptom statements should be discounted. (R. 20) ("it was frequently documented the claimant was focused on his physical conditions during his mental status exams and it was noted during his compensation and pension exam the claimant suffered from major depressive disorder that was the result of his severe [obesity] connected with glaucoma and vision problems."); (R. 28) ("the undersigned finds that the claimant's allegations regarding the severity and limiting effects of his depression and post-traumatic stress disorder are not fully supported by the limited objective record…claimant is also reported to be self-medicating [] with marijuana and the claimant's exams indicate a focus on his vision loss, which contributed to a secondary depressive disorder."); (R. 29) (same); (R. 30) ("Moreover, the undersigned assigns little weight to the rest of Dr. Luchins' opinion as it is inconsistent with the compensation and pension exam from February 22, 2017, which indicated the claimant suffered from major depressive disorder as a result of his vision problems and he only had mild to transient symptoms controlled by medication.").

13

The Court does not share the ALJ's apparent view that the interconnectedness of Claimant's physical and mental symptoms detracts from the impact of those mental limitations on Claimant's ability to sustain full-time employment. If, as Dr. Luchins's treatment notes amply suggest, Claimant's depressive symptoms and PTSD were exacerbated by Claimant's physical pain and preoccupation with the possibility that he might soon go blind, that does not lessen the disabling effect of those symptoms on his ability to sustain full-time employment.

It also is problematic that the ALJ did not define or explain what she meant by simple, routine, and repetitive tasks. "Unskilled work" may be a term of art that refers to tasks that are not complex and do not take long to learn, 20 C.F.R. § 404.1568(a), but the ALJ needed to put some meat on the bones in the context of Claimant's particular limitations and the opinions of record in this case. For example, the ALJ gave great weight to the opinion of Dr. Rohini Mendonca, the state agency consultant at the reconsideration level, who concluded that Claimant only had the mental capacity to concentrate on, understand and remember one to three step instructions. (R. 96). Dr. Mendonca noted that Claimant may be impaired for detailed or complex instructions because of his problems with immediate memory recall and concentration, and ultimately opined that Claimant retained the ability to complete "brief, routine tasks," and even then, only with "adequate concentration, pace, and persistence." (R. 96). But the ALJ never discussed whether "simple routine repetitive work" included a restriction, consistent with Dr. Mendonca's opinion, on the type or complexity of workplace instruction Claimant could receive. *See, e.g., O'Connor-*

14

*Spinner,* 627 F.3d at 621 (finding error where the claimant's psychologist "found a moderate limitation on '[t]he ability to accept instructions and respond appropriately to criticism from supervisors'" but "[t]he ALJ did not include this limitation in the hypothetical he posed to the VE, nor does he discuss it explicitly in his decision."). Without further (or any) explanation by the ALJ about what she meant by "simple routine repetitive work" Court cannot accurately assess whether the ALJ captured all of Claimant's mental limitations. That is particularly true given Dr. Mendonca's opinion that Claimant could only concentrate on or remember one to three step instructions – an opinion to which the ALJ broadly afforded great weight. (R. 96).

In sum, the ALJ did not account for the "totality of a claimant's limitations" in determining the proper RFC. *See Moreno*, 882 F.3d at 730. The ALJ should take care on remand to build an "accurate and logical bridge" between the evidence of Claimant's mental impairments and the hypothetical and mental RFC. *See O'Connor–Spinner,* 627 F.3d at 620–21; *Craft,* 539 F.3d at 677–78. Specifically, the ALJ needs to do more, consistent with the Seventh Circuit's repeated guidance, to address the basis of Claimant's mental limitations and target those limitations with specific restrictions in the RFC and accompanying hypotheticals. For an individual with stress-induced panic attacks, a low-stress work environment with simple, routine tasks may sufficiently accommodate a moderate limitation in concentration, persistence, and pace. For an individual whose depression- and PTSD-related symptoms impair his ability to concentrate on particular tasks and find the motivation to perform those tasks consistently and at pace for a full workday, it may

15

not be so simple. *See also* SSR 85–15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job."). At least on the record before this Court, the ALJ did not do enough to accommodate Claimant's deficiencies in concentration, persistence, and pace by merely limiting the RFC and hypothetical to simple, repetitive work.

## II. The ALJ Should Revisit the Medical Opinion Evidence

In reviewing the medical opinion evidence, the ALJ assigned partial weight to the opinion of Claimant's treating physician, Dr. Luchins, but great weight to the opinions of the state agency physicians Dr. Charles Kenney and Dr. Rohini Mendonca. (R. 31). Claimant argues that the ALJ erred when she did not give controlling weight to Dr. Luchins's opinion that Claimant has work-preclusive physical limitations.

Although the Court does not reach any firm conclusion on the adequacy of the ALJ's explanation for discounting Dr. Luchins's opinion because remand here is mandated for other reasons, the ALJ does not appear to have minimally articulated her reasons for giving Dr. Luchins's opinion only "some weight." Claimant filed his claim before 2017, meaning his treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20

16

C.F.R. § 404.1527(c)(2). If contrary evidence is introduced, however, "the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Bates v. Colvin*, 736 F.3d 1093, 1099–100 (7th Cir. 2013) (quoting *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)) (internal quotations omitted); see also, *Ray v. Saul*, 2021 WL 2710377, at *2 (7th Cir. 2021). The ALJ, however, still must provide "good reasons" for discounting a treating physician's opinion, *Fair v. Saul*, 2021 WL 1711810, at *3 (7th Cir. 2021), and in so doing, must consider the length, nature, and extent of the treatment relationship, the frequency of examination, the physician's specialty, the types of tests performed, and the consistency and support for the physician's opinion. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); see also 20 C.F.R. § 404.1527(c). So long as the ALJ minimally articulates her reasons and considers the proper factors, the decision to afford a treater's opinion less than controlling weight will stand. *Elder*, 529 F.3d at 415. The Court reviews an ALJ's decision to give more weight to state-agency doctors' opinions than a treating physician's for substantial evidence. 42 U.S.C. § 405(g); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

Here, the ALJ discounted Dr. Luchins's opinion in a couple of sentences that simply highlighted what she felt was an inconsistency between Dr. Luchins's opinion and a compensation and pension exam Claimant underwent in February 2017, eight months before Dr. Luchins rendered his opinion. (R. 30). She did not discuss any of the factors required by the regulations and the well-established Seventh Circuit precedent described above, such as the length, nature, and extent of the physician

17

and claimant's treatment relationship, *see* 20 C.F.R. § 404.1527(d)(2)(I)-(ii), whether the physician supported his or her opinions with sufficient explanations, *see id.* § 404.1527(d)(3), and whether the physician specializes in the medical conditions at issue, *see id.* § 404.1527(d)(5). An ALJ must do more than just summarize medical findings and then, a few paragraphs later, entirely discount the only treating opinion of record without analysis or explanation. At a minimum, it was incumbent on the ALJ to articulate her "good reasons" for giving Dr. Luchins's opinion no weight and support those reasons with evidence. SSR 96-2p at *5, 1996 WL 374188 (July 2, 1996); *Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). It does not appear to the Court that the ALJ did so here. On remand, the ALJ is encouraged to revisit the medical opinion evidence; in particular, the weight to be afforded Dr. Luchin's opinion as Claimant's treating physician with an eye towards the factors that must be addressed according to the regulations.

### III. Remaining Issues

The Court is remanding on the error identified above regarding Claimant's mental limitations – specifically, Claimant's moderate limitations in concentration, persistence, and pace as precipitated by his depression and PTSD. Remanding on these grounds will necessarily affect the ALJ's RFC assessment and, therefore, the other issues Claimant has raised here on appeal. The Court, accordingly, sees no need to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway, except for the Court's comments on the ALJ's assessment of the medical opinion evidence. Nor would the Court's

18

assessment of the other disputes Claimant posits change the result in this case, which is to remand for further proceedings and a more fulsome assessment of Claimant's mental limitations. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Claimant should make no assumptions either.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

Claimant's Motion to Reverse the Decision of the Commissioner of Social Security [ECF No. 13] is granted and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   December 14, 2021